**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

UNITED STATES OF AMERICA,

                                      CV 03-14-M-DWM-JCL

               Plaintiff,

       vs.

                                     FINDINGS & RECOMMENDATION
                                     OF UNITED STATES
                                     MAGISTRATE JUDGE

LISA ABRAHAMSEN, et al.,

               Defendants.

_____

TIN CUP COUNTY WATER and/or
SEWER DISTRICT,

               Counterclaimant,

       vs.

UNITED STATES OF AMERICA,

               Counterclaim Defendant.

_____

    In January 2003, the United States of America ("the Government") commenced this action against the Tin Cup County Water and/or Sewer District ("the District") and several individual landowners, seeking reimbursement for money spent repairing the Tin Cup Dam and Reservoir located in the Selway-Bitterroot Wilderness Area of the National Forest in Montana.

FINDINGS AND RECOMMENDATION/ PAGE 1

Complaint (January 31, 2003).  The parties settled that dispute, and the District filed an amended counterclaim seeking primarily to quiet title to an easement for the Tin Cup Dam and Reservoir pursuant to the Irrigation or General Right of Way Act of March 3, 1891 ("1891 Act").  First Am. Counterclaim (May 24, 2004). The District also seeks to prevent the Forest Service from applying the Federal Dam Safety Act and asks for a declaration from this Court that the "primary responsibility for dam safety at the Tin Cup Dam and Reservoir...remains with the State of Montana."  First Am. Counterclaim, ¶ 13.

The Government has moved to dismiss the District's easement claim as barred by the Quiet Title Act's statute of limitations, estoppel, and laches.  The Government seeks to dismiss the District's remaining claims based on the doctrine of sovereign immunity.  The parties have also filed cross-motions for summary judgment on the question of whether the District possesses an easement under the 1891 Act. (Sept. 18, 2006).

Having considered the briefs and materials of record, the Court enters the following:

## RECOMMENDATION

**IT IS RECOMMENDED** that:

1) The United States' Rule 12 Motion to Dismiss Amended Counterclaim (Sept. 26, 2006) be **GRANTED;**

FINDINGS AND RECOMMENDATION/ PAGE 2

2) Tin Cup Water and/or Sewer District's Motion for Summary Judgment (July 21, 2004) be **DENIED AS MOOT**;

3) Tin Cup Water and/or Sewer District's Motion for Summary Judgment (Sept. 18, 2006) be **DENIED AS MOOT**.

4) The United States' Motion for Summary Judgment (Nov. 20, 2006) be **DENIED AS MOOT**.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this <u>12th</u>  day of February, 2007

<u>    /s/ Jeremiah C. Lynch    </u>
Jeremiah C. Lynch
United States Magistrate Judge

## **RATIONALE**

### I.  BACKGROUND

The Tin Cup Dam and Reservoir are located in the Bitterroot National Forest in the Selway-Bitterroot Wilderness.  Complaint, ¶¶ 4,6.  The District's various predecessors built and maintained the Tin Cup Dam and Reservoir pursuant to a series of special use permits (SUPs), the first of which was issued by the Forest Service on January 29, 1907.  Govt. Exh. 1H.  The District currently operates and maintains the dam and reservoir pursuant

to an SUP issued by the Forest Service in May 2001.  Govt. Exh.
555.

Since passage of the Wilderness Act of 1964, 16 U.S.C. §§
1131 et seq., the District and its predecessors have on several
occasions sought written permission from the Forest Service to
use mechanized equipment and tools for purposes of accessing,
repairing, and maintaining the dam.  Govt.'s State.
Uncontroverted Facts, ¶¶ 35-54.  Because the Government disputes
that the District "has an easement with any special rights of
reasonable on the ground access" to the dam, the District now
seeks to quiet title to an easement "for the Tin Cup Dam and
Reservoir pursuant to the Act of 1891" and all associated rights.
First Am. Counterclaim, p. 3.

The Government has moved pursuant to Fed. R. Civ. P.
12(b)(1) to dismiss the District's amended counterclaim for lack
of subject matter jurisdiction based on the District's failure to
comply with the Quiet Title Act's, 28 U.S.C. § 2409a, twelve year
statute of limitations, laches, and estoppel.  The Government
also moves to dismiss the District's claims related to the
Federal Dam Safety Act as barred by the doctrine of sovereign
immunity.

Also pending before the Court are the parties' cross-motions
for summary judgment on the question of whether the District has
an easement under the 1891 Act.  Before addressing the summary
judgment motions, however, this Court must first resolve the

Government's threshold motion to dismiss and determine whether subject matter jurisdiction exists over the counterclaims.

## II.   LEGAL STANDARD - MOTION TO DISMISS

The "party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  In responding to the Government's Rule 12(b)(1) motion to dismiss, the District thus bears the burden of establishing that this Court has subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (because "[f]ederal courts are courts of limited jurisdiction...[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

The Government in this case moves to dismiss the District's counterclaims as barred by the statute of limitations, laches, estoppel, and the doctrine of sovereign immunity.  In doing so, it has submitted various materials outside the pleadings for this Court's consideration.  The District argues that this Court may not consider those materials without first converting the Government's motion into one for summary judgment.  District's Br. in Opposition, 2 (Oct. 11, 2006).  The District is mistaken.

A "Rule 12(b)(1) attack[] on jurisdiction can be either facial, confining the inquiry to the allegations in the

complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). *See also, St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court."). The Government in this case mounts more than a mere facial attack on the amended counterclaim, instead claiming that subject matter jurisdiction is lacking due to the District's underlying failure to comply with the applicable limitations period and failure to establish a waiver of sovereign immunity.

Where, as here, "the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n. 2 (*citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In looking to matters outside the pleadings, the Court must "resolve all disputes of fact in favor of the non-movant...similar to the summary judgment standard." *Drier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). As with a motion for summary judgment, the party moving to dismiss for lack of subject matter

jurisdiction "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

For these reasons, this Court may properly look beyond the pleadings in this case to determine whether it has subject matter jurisdiction over the pending counterclaims, without first converting the motion into one for summary judgment. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## III.   DISCUSSION

The Government has moved to dismiss the District's first amended counterclaim in its entirety based on lack of subject matter jurisdiction.

### A.   1891 Act Easement Claim

The District seeks to quiet title to an easement for the Tin Cup Dam and Reservoir pursuant to the Quiet Title Act (QTA), 28 U.S.C. § 2409a.  It specifically asks this Court to declare that it "possesses an easement for the Tin Cup Dam and Reservoir pursuant to the Act of 1891, including the right to store 2240 acre feet of water, and all other rights associated therewith," which would presumably include the much-disputed right to use mechanized equipment to access, maintain, and repair the dam.

The Government moves to dismiss the District's easement claim as barred by the QTA's twelve year statute of limitations,

laches, and estoppel.  Because it is dispositive, this Court
turns first to the Government's statute of limitations argument.

The QTA provides "the exclusive means by which adverse
claimants [can] challenge the Unites States' title to real
property."  *Lesnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir.
1999).  While the QTA thus waives the United States' sovereign
immunity in a civil action "to adjudicate a title to real
property in which the United States claims an interest," any such
action must be brought within the applicable limitations period.
28 U.S.C. § 2409a(a).  Under § 2409a(g), a civil action to quiet
title is "barred unless it is commenced within twelve years of
the date upon which it accrued."  Any "[s]uch action shall be
deemed to have accrued on the date the plaintiff or his
predecessor-in-interest knew or should have known of the claim of
the United States."  28 U.S.C. § 2409a(g).

Because the statute of limitations "constitutes a condition
on the waiver of sovereign immunity," it is strictly construed in
favor of the Government.  *Block v. North Dakota*, 461 U.S. 273,
287 (1983).  "If the statute of limitations has run on a waiver
of sovereign immunity, federal courts lack jurisdiction."
*Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005) (*citing
Block*, 461 U.S. at 292).

Here, the Government argues that the District and/or its
predecessors were placed on notice of the Government's claim to

the land at issue decades ago, and in two ways.  First, the
Government maintains that the District's predecessors knew, or
should have known, of the Government's claim to the land as early
as 1907 and repeatedly thereafter, as a result of SUPs issued by
the Forest Service governing operation of the Tin Cup Dam and
Reservoir.  Second, the Government contends that the District's
predecessor was placed on notice of the Government's claim to the
land in February 1967, when the Forest Service denied him
motorized access to the dam pursuant to the mandates of the
Wilderness Act of 1964, 16 U.S.C. §§ 1131 et seq.  The Court will
address each of these arguments in turn.

### 1. Special Use Permits

Under Ninth Circuit caselaw, the fact that a party seeking
to quiet title to an easement knows of the government's ownership
interest in the property is insufficient to trigger the statute
of limitations under the QTA.  *Michel v. United States*, 65 F.3d
130, 131 (9th Cir. 1995).  This is because "[t]he government's
claim to ownership and control of the servient tenement can be
entirely consistent with private ownership of an easement."
*McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005).  As the
Ninth Circuit recently recognized, "federal agencies like the
Forest Service often have regulatory powers over easements and
other property interests, including, presumably, the ability to
require permits and put conditions on use."  *Skranak v.
Castenada*, 425 F.3d 1213, 1216-17 (9th Cir. 2005).

Consistent with this principle, "mild interference with the use of an easement pursuant to the government's own property interests will not start the statute of limitations running." *McFarland*, 425 F.3d at 727.  Furthermore,"[t]o avoid forcing landowners and the government into 'premature, and often unnecessary, suits,' [the court] should not lightly assume that regulatory or supervisory actions, as opposed to those that deny the easement's existence, will trigger the statute of limitations." *McFarland*, 425 F.3d at 727.  Accordingly, where a party claims title to a non-possessory interest such as an easement, as opposed to fee title, that party's action accrues "only when he or his predecessors-in-interest 'knew or should have known the government claimed the exclusive right to deny their historic access" to the land upon which the claimed easement rests. *McFarland*, 425 F.3d at 727 (*quoting Michel*, 65 F.3d at 132).

Here, the Government contends that the SUPs issued by the Forest Service, beginning in 1907 and periodically thereafter, were sufficient to put the District and its predecessors on notice that the Government claimed an interest adverse to that asserted by the District in this litigation.  The Government maintains that it consistently "asserted its exclusive authority to control the land underlying the dam and reservoir," and points to various SUP provisions that it maintains are inconsistent with the presence of an easement.  For example, the Government points to the 1970 SUP, in which the Forest Service expressly "reserved

the right to use and permit the use of the land covered under the permit," and advised the permittee that authorization under the permit was for "temporary use and occupancy." Govt. Exh. 71 (1970 SUP, Condition Nos. 15, 30). Consistent with these provisions, the 1970 SUP further provides that

> [u]pon abandonment, termination, revocation, or cancellation of this permit, the permittee shall remove within a reasonable time all structures and improvements except those owned by the United States, and shall restore the site unless otherwise agreed upon in writing or in this permit. If the permittee fails to remove all such structures or improvements within a reasonable period, they shall become the property of the United States, but that will not relieve the permittee of liability for the cost of their removal and restoration of the site.

These provisions were sufficient to put the District's predecessor on notice, as early as 1970, that the Government claimed an interest in the land adverse to the easement asserted in this litigation. A fair reading of the above-cited provisions establishes that the SUP was the exclusive source of the permittee's right to use and operate the Tin Cup Dam. If the District's predecessor in fact possessed independent use rights, such as an easement under the 1891 Act, then the SUP would not have required the permittee to remove any improvements on the land upon termination or revocation of the permit. The fact that the SUP directed the permittee to remove all structures and improvements from the premises upon termination is a clear indication that it was acting in its capacity as a landowner "claiming exclusive rights" to the property, not "in a regulatory capacity." *Skranak*, 425 F.3d at 1217. The terms of the 1970 SUP were thus sufficient to place the District's predecessor on

FINDINGS AND RECOMMENDATION/ PAGE 11

notice that the Government claimed exclusive rights to the property, which were inconsistent with the presence of an easement.   "The existence of one uncontroverted instance of notice," such as that provided by the 1970 SUP, "suffices to trigger the limitations period." *State of Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984).

The District, of course, argues otherwise and asserts that the terms of the various SUPs of record are consistent with the presence of an easement for the Tin Cup Dam and Reservoir. According to the District, it has use rights under the 1891 Act, separate and independent of the use rights granted pursuant to the SUPs.  For support, the District relies primarily on this Court's decision in *Roth v. United States*, 326 F.Supp.2d 1163 (D. Mont. 2003).  As the District does here, the plaintiffs in *Roth* sought to quiet title to an 1891 Act easement for a dam and reservoir located in the Bitterroot National Forest.  *Roth*, 326 F.Supp.2d at 1165.  The government likewise argued that the plaintiffs' easement claim was barred by the QTA's twelve year statute of limitations, based on notice provided decades earlier by SUPs issued for construction of the dam and reservoir.  *Roth*, 326 F.Supp.2d at 1167.  Specifically, the government maintained the fact that the plaintiffs' predecessor had applied for and received those SUPs indicated he had express notice of the government's claim to the property, thereby triggering the limitations period.  *Roth*, 325 F.Supp.2d at 1167.

This Court held otherwise, concluding "the fact that Plaintiffs' predecessor knew of the government's ownership interest in the land upon which the dam and reservoir were built was insufficient to trigger the running of the limitations period." *Roth*, 326 F.Supp.2d at 1168.  The Ninth Circuit has since reaffirmed that knowledge of the government's ownership alone, without more, is insufficient to trigger the statute of limitations.  *McFarland*, 425 F.3d at 727.  This is because "the government's claim to ownership and control of the servient tenement can be entirely consistent with private ownership of an easement." *McFarland*, 425 F.3d at 727.  Apart from noting that the SUPs were revocable, however, *Roth* says nothing about the specific terms of the SUPs.  *Roth* does not stand for the proposition that a SUP can never provide sufficient notice to trigger the limitations period.  Here, unlike *Roth*, the terms of the 1970 SUP are clearly inconsistent with the presence of an easement and establish that the District had no use rights independent of the permits themselves.

*Roth* is distinguishable in one other, even more important respect.  While this Court explained in *Roth* that knowledge of the government's ownership interest alone was insufficient to trigger the limitations period, it rejected the government's statute of limitations argument based primarily on the fact that the government had "clearly affirmed the Plaintiffs' rights under the 1891 Act" just five years before they commenced their quiet title action.  *Roth*, 326 F.Supp.2d at 1168.  A 1998 Operating

Agreement for the Tamarack Lake dam and reservoir specifically stated that "pursuant to...the Act of March 3, 1891, Ch. 561 (26 Stat. 1102), Stephen Roth, Trapper Peak Ranch owns a right-of-way to use federal lands for the purpose of the dam and reservoir...." *Roth*, 326 F.Supp.2d at 1168.  "Because the Government clearly affirmed the Plaintiffs' rights under the 1891 Act in 1998," this Court concluded that the quiet title action commenced by the plaintiffs in 2003 was "not barred by the twelve year statute of limitations." *Roth*, 326 F.Supp.2d at 1168.

Here, unlike *Roth*, there is no evidence that the Government has ever acknowledged the presence of a 1891 Act easement or otherwise abandoned its claim that the District's use rights arise only from the SUPs.  *See Michel*, 65 F.3d at 132.  While the District points to a 1998 letter in which the Forest Service stated it did not have "enough evidence to conclude that [it] consented to the grant of a permanent easement for the Tin Cup Dam."  Affid. Tex Marsolek (filed Sept. 18, 2006), Attachment 4. This refusal by the Forest Service to acknowledge the presence of an easement falls far short of its explicit recognition in *Roth* that such an easement existed.  *Roth*, 326 F.Supp.2d at 1167-68.

Based on the foregoing, this Court concludes that the District's predecessor had notice, as early as 1970, that its only use rights arose out of the SUPs, and the Government claimed to have an interest in the land adverse to that associated with an easement.  Because the District did not commence this

litigation until 2003, their action is barred by the QTA's twelve year limitations period.

### 2. Denial of Access

Even if the terms of the 1970 SUP were not sufficient to trigger the statute of limitations, the District's predecessor was placed on notice of the Government's claim to the land in February 1967, when the Forest Service denied him motorized access to the dam pursuant to the mandates of the Wilderness Act of 1964, 16 U.S.C. §§ 1131 et seq.

As discussed above, a plaintiff's action to quiet title to an easement on government land accrues "only when he or his predecessors-in-interest 'knew or should have known the government claimed the exclusive right to deny their historic access' to" the land on which the alleged easement rests. *McFarland*, 425 F.3d at 727; *Michel*, 65 F.3d at 132.  In *Michel*, landowners brought suit against the government to quiet title to certain roads and trails across a government owned wildlife refuge.  *Michel*, 65 F.3d at 131.  The Ninth Circuit rejected the government's argument that plaintiffs' knowledge of the government's claim of title was sufficient to trigger the running of the limitations period.  *Michel*, 65 F.3d at 131.  The court instead concluded that "[a] plaintiff's cause of action for an easement across government land only accrues when the government, 'adversely to the interests of plaintiffs, denie[s] or limit[s] the use of the roadway for access to plaintiffs' property.'" *Michel*, 65 F.3d at 132 (*quoting Werner v. United States*, 9 F.3d

1514, 1516 (11th Cir. 1993).  In *McFarland*, the Ninth Circuit
reaffirmed the notion that, where the government denies a party's
historic access to an alleged easement, that denial of access
constitutes notice that the government claimed exclusive
ownership, thereby triggering the statute of limitations.
*McFarland*, 425 F.3d at 727 (concluding that "general ban on
snowmobiles," as opposed to actual denial of access to road on
which claimed easement rested, was insufficient to constitute
notice).

        In February 1967, the Forest Service denied the District's
predecessor its historic access to the dam and reservoir when it
refused the predecessor's request to use mechanized equipment to
reach the dam.  Govt. Exh. 62a.  The District's predecessor had
asked for permission to bring a rubber tired loader up to the dam
to dispose of debris, but the Forest Service denied its request
pursuant to the Wilderness Act of 1964, which placed restrictions
on certain activities within areas designated as "wilderness,"
including the use of motorized vehicles or equipment.  16 U.S.C.
§§ 1133(c).  Upon learning that its request for mechanized access
had been denied, the District's predecessor advised the Forest
Service that he might challenge the "mechanized equipment law."
Govt. Exh. 62a.  It is thus evident from the record that the
District's predecessor knew no later than February 1967 that the
"government claimed the exclusive right to deny [its] historic
access to" the Tin Cup Dam and Reservoir.  *McFarland*, 425 F.3d at
727; *Michel*, 65 F.3d at 132.  Because the Government, "adversely

to the interests of the" District's predecessor, "denie[d] or limit[ed] the use of the" alleged easement to an extent consistent with that of exclusive ownership, the QTA's statute of limitations was triggered at that time and had long since run when the District commenced this action in 2003.[1]

Having concluded that the District's easement claim is barred by the QTA's twelve year statute of limitations, this Court need not address the Government's alternative arguments that the counterclaim is likewise barred by the doctrines of laches and estoppel.

**B.  Dam Safety Claims**

In addition to its easement claim under the 1891 Act, the District also, by way of its counterclaim, seeks to have the Court determine whether the Forest Service or the State of Montana has primary responsibility for dam safety at the Tin Cup Dam and Reservoir.  In essence, the District argues that responsibility for dam safety lies with the State of Montana because Congress has never delegated responsibility for safety at a non-federal dam located on federal land.  In the words of the District, it asks the Court to declare that "the United States Forest Service has not been delegated primary responsibility for dam safety at Tin Cup Dam and Reservoir and that said duty remains with the State of Montana acting under its sovereign

---

[1]  To the extent the District seeks a declaration that their alleged 1891 Act easement gives them the right to impound a certain amount of water, its claim is likewise barred by the QTA's statute of limitations.

police powers and that the Forest Service retains the authority to work cooperatively with the State of Montana to preserve Forest Service values and the public safety."  First Am. Counterclaim, ¶ 13.

The United States has moved to dismiss the District's request for declaratory relief regarding dam safety.  In view of the conclusory nature of the District's pleadings for declaratory relief, and particularly the District's failure to clearly articulate the jurisdictional basis for its claim, the parties have vollied numerous arguments pertaining to the Government's motion to dismiss.  The focus of the arguments changed as the District undertook in response to the Government's motion, to identify the basis for this Court's jurisdiction over the subject matter of its claim.  In order to make clear the basis upon which the Court finds it appropriate to dispose of the Government's motion to dismiss, the Court will discuss the series of arguments that were presented.

The initial basis upon which the Government moved to dismiss the dam safety claim was the doctrine of sovereign immunity.  It is well-established that the United States is absolutely immune from suit unless it has waived its immunity.  *United States v. Shaw*, 309 U.S. 495, 500-01 (1940).  Such a waiver "cannot be implied but must be unequivocally expressed."  *United States v. King*, 395 U.S. 1, 4 (1969).  As the party asserting the counterclaim, it is the District's burden to establish that the United States has unequivocally waived its sovereign immunity.

*Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).  The
existence of such a waiver is a prerequisite to federal court
jurisdiction.  *United States v. Mitchell*, 463 U.S. 206, 212
(1983).

The only allegation set forth in the District's first
amended counterclaim regarding waiver was that the United States
had waived its immunity under the QTA, 28 U.S.C. § 2409a.  First
Am. Counterclaim, ¶ 3.  In seeking dismissal, the Government
argued that "there is no provision under the QTA for a waiver
allowing suit against the United States to prohibit the Forest
Service from applying the Federal Dam Safety Act" or to otherwise
resolve a controversy over dam safety.  Govt's. Br. in Support,
19.  The District implicitly concedes the Government is correct
in this assertion because the District failed to cite to any QTA
provision that could be construed as providing the necessary
waiver.

Instead, and for the first time, the District takes the
position in its response brief that the Administrative Procedures
Act (APA), 5 U.S.C. § 702,[2] provides a waiver for "non-monetary
and non-title claims" such as its dam safety claims.  District's

---

[2] That statute provides as follows:

> An action in a court of the United States seeking relief
> other than money damages and stating a claim that an
> agency or an officer or employee thereof acted or failed
> to act in any official capacity or under color of legal
> authority shall not be dismissed nor relief therein be
> denied on the ground that it is against the United States
> or that the United States is an indispensable party.

5 U.S.C. § 702.

Response, 8.  The District concedes its amended counterclaim contains no mention of the APA, but maintains "that 5 U.S.C. § 702 waives sovereign immunity for all non-quiet title and non-monetary claims against the United States - whether or not specific reference is made to the APA."  District's Br. in Response, 8.  *See, Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Board*, 792 F.2d 782, 793 (9th Cir. 1986) (explaining "that section 702 does waive sovereign immunity in non-statutory review actions for non-monetary relief brought under 28 U.S.C. § 1331").

The APA indeed "represents a general waiver of sovereign immunity by the United States where an individual has suffered a legal wrong because of, or has been adversely affected or aggrieved by, agency action and seeks equitable relief." *Micalizzi v. Rumsfeld*, 247 F.Supp.2d 556, 560 (D. Vt. 2003) (*citing* 5 U.S.C. § 702 and *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 143 (2d. Cir. 1999)).  Although the APA provides a broad waiver of sovereign immunity allowing judicial review of agency action, the Act also limits when this right of review is available to the point in time when the challenged action is final.  5 U.S.C. § 704; *see Assiniboine and Sioux Tribes*, 792 F.2d at 789.

While the District's second counterclaim is somewhat vague, it attempts to contest the Forest Service's authority to implement guidelines for dam safety under the Federal Dam Safety Act, 33 U.S.C. § 467 et seq.  That this is the essence of the

FINDINGS AND RECOMMENDATION/ PAGE 20

District's claims is apparent from the briefing, in which it asserts that the Forest Service's decision to undertake emergency repairs at the Tin Cup Dam and Reservoir constituted a final agency action with which it did not agree.  District's Integrated Response, 6 (Dec. 7, 2006).  According to the District, responsibility for safety of a non-federal dam located on federal land remains with the State of Montana if the dam is not subject to safety review by a federal agency.  *See* M.C.A. § 85-15-107(2). As noted, the District seeks a declaration from this Court that the Tin Cup Dam and Reservoir is such a dam because the Forest Service was without authority to promulgate dam safety guidelines.

In response to the District's invocation of the APA, the Government argues the District cannot seek review of the Forest Service's implementation of dam safety guidelines in this case because it fails to point to any final agency action.  Nor does the record contain any evidence of final agency action.  To the contrary, Forest Supervisor David Bull indicates he never "received a formal request from Tin Cup Water and/or Sewer District to exempt Tin Cup Dam from dam safety review and regulation by the United States Forest Service."  Govt.'s Reply, Exh. A.  The District argues for the first time in response to the Government's summary judgment motion that the Forest Service's decision to assert exclusive dam safety authority by repairing the dam in June of 1998 constituted "the final agency action of asserting exclusive dam safety authority."  The fact

the Forest Service undertook to repair the dam is insufficient for purposes of establishing final agency action. *See, Ecology Center, Inc. v. U.S.F.S.*, 192 F.3d 922, 924 (9th Cir. 1999) ("final agency action is the consummation of the agency's decision making process").

The Government further argues that even if the repairs undertaken by the Forest Service constituted final agency action, the District failed to exhaust available administrative remedies - a prerequisite to judicial review.  Relying upon 7 U.S.C. § 6912(e), which requires a claimant to exhaust all available administrative appeal procedures before bringing an action in court against the Secretary of Agriculture, the Government contends the District's claim must be dismissed for lack of subject matter jurisdiction.

While the Court agrees the District's claim regarding dam safety is appropriately dismissed for failure to exhaust administrative remedies, it is important to clarify that the dismissal is not based upon lack of subject matter jurisdiction. The exhaustion requirement of Section 6912(e) is not a jurisdictional matter.  Although a divergence of opinion exists among the circuit courts which have addressed the issue, the Ninth Circuit has expressly concluded that failure to exhaust administrative remedies required by Section 6912(e) does not deprive a district court of subject matter jurisdiction. *McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002).  Consequently, a failure to exhaust administrative

remedies under Section 6912(e) is properly treated as a matter in abatement subject to an unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  As such, the proper remedy for the District's failure to exhaust administrative remedies would be dismissal of the claim without prejudice.  *Wyatt*, 315 F.3d at 1120.

Forest Service appeal procedures are set forth at 36 C.F.R. Part 251.  For example, 26 C.F.R. § 251.90(b) requires that an appellant file a written notice of appeal providing such information as a statement of facts, "specific references to any law, regulation, or policy that the appellant believes to be violated," and "[a] statement as to whether and how the appellant has tried to resolve the issue."  *See also, Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957 (9th Cir. 2002)(noting that "[s]tatutes and regulations governing actions of the Forest Service reiterate the administrative exhaustion requirement.").  The District never submitted a formal request for an exemption from dam safety review and regulation by the Forest Service, and by extension has failed to exhaust its administrative remedies.  Govt.'s Reply, Exh. A.  For these reasons, the District's dam safety claims should be dismissed without prejudice, for failure to exhaust administrative remedies in accordance with 7 U.S.C. § 6912(e).