FILED
MISSOULA, MT

2007 APR 4 AM 9 06

PATRICK E. DUFFY

BY _____

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CV 03-14-M-DWM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| LISA ABRAHAMSEN, et al., ) | |
| ) | |
| Defendants. ) | |
| ───────────────────────────── ) | |
| ) | |
| TIN CUP COUNTY WATER and/or ) | |
| SEWER DISTRICT, ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Counterclaim Defendant. ) | |
| ) | |

## I.   Introduction

United States Magistrate Judge Jeremiah C. Lynch entered

Findings and Recommendation in this matter on February 12, 2007.

Counterclaimant Tin Cup County Water and/or Sewer District ("Tin

-1-

Cup") timely objected on February 22, 2007.  Tin Cup therefore is
entitled to de novo review of the record.  28 U.S.C. § 636(b)(1).
Judge Lynch recommended granting the United States' Rule 12
motion to dismiss Tin Cup's amended counterclaim and denying the
parties' cross-motions for summary judgment as moot.  After
conducting a de novo review of the record, I agree with Judge
Lynch's conclusion that Tin Cup's Quiet Title Act ("QTA") claim
is barred by the statute of limitations and that its
Administrative Procedure Act ("APA") claim should be dismissed
without prejudice for failure to exhaust administrative remedies.
Because the parties are familiar with the factual and procedural
background, they will not be restated here.

## II.  Analysis

### A.    Quiet Title Act Claim

Judge Lynch determined Tin Cup's easement claim was barred
by the QTA's twelve-year statute of limitations based in part on
an abandonment provision contained in special use permits issued
by the Forest Service to Tin Cup and its predecessors-in-interest
beginning in 1914.  The abandonment provision required the
permittee to remove all structures and improvements from the land
upon termination of the permit.  According to the provision, if
these items were not removed within a reasonable time after
termination of the permit, they became the property of the United
States.  Judge Lynch determined this provision put Tin Cup and

its predecessors-in-interest on notice that the Government claimed exclusive ownership of the land on which the Tin Cup Dam and Reservoir (the "Dam") was built because it indicated Tin Cup's right to use and operate the Dam was based solely on the permit issued by the Forest Service.

In its objections, Tin Cup distinguishes its claim for an easement for the Dam, made pursuant to the Irrigation or General Right of Way Act of March 3, 1891 ("1891 Act"), and its claim for access to the Dam, which Tin Cup asserts it is entitled to under the Wilderness Act of 1964 if it in fact possesses an easement for the Dam.  Tin Cup asserts Judge Lynch's recommendation confuses the two claims, noting the United States has never challenged Tin Cup's ownership of the Dam.  Judge Lynch's recommendation does not commingle Tin Cup's claims as Tin Cup suggests.  Instead, Judge Lynch correctly observed that Tin Cup claims an easement for the Dam pursuant the 1891 Act and acknowledged that such an easement would presumably give rise to access rights under the Wilderness Act.  In any event, whether Tin Cup owns the Dam is a distinct consideration from whether Tin Cup possesses an easement for the land on which the Dam sits. Although the United States concedes Tin Cup owns the dam structure, it contests Tin Cup's claim to an interest in the land underlying the structure.  The United States' position is entirely consistent with the special use permits' abandonment

provision, which permits Tin Cup to remove any structures or improvements from the land if the permit is terminated.

Tin Cup contends Judge Lynch's analysis is inconsistent with the decisions in <u>Roth v. United States</u>, 326 F. Supp. 2d 1163 (D. Mont. 2003), and <u>Skranak v. Castenada</u>, 425 F.3d 1213 (9th Cir. 2005).  In <u>Roth</u>, the court rejected the Government's assertion that a termination provision in the plaintiffs' special use permit gave the plaintiffs notice of the United States' adverse claim of ownership for purposes of triggering the QTA's statute of limitations.  326 F. Supp. 2d at 1168.  The provision stated the permit was terminable "at the discretion of the [Forest Service]."  <u>Id</u>. at 1167.  The court in <u>Roth</u> concluded "[e]ven if the Forest Service had revoked the special use permit, an easement for the dam and reservoir could nevertheless remain under the authority of the 1891 Act."  <u>Id</u>. at 1168.

The abandonment provision at issue here, however, is distinguishable from the termination provision at issue in <u>Roth</u>. As the court noted in <u>Roth</u>, the Forest Service's authority to revoke a permit does not preclude a permittee from possessing an easement.  In contrast, if a permittee is required to remove all structures and improvements from the land once a permit is revoked least they become the property of the landowner, the permittee is precluded from possessing an easement.  If Tin Cup possessed an easement on the land underlying the Dam, it would be

-4-

entitled to maintain and operate the Dam even after the special use permit was terminated.  The permits' provision to the contrary, thus, constituted an adverse claim of exclusive ownership by the Government that triggered the statute of limitations.[1]

The court's decision in Roth also relied on an agreement signed by the Forest Service indicating the plaintiffs owned a right-of-way.  Id. at 1167-68.  The court determined the agreement constituted an abandonment of any prior claim of exclusive ownership by the Government, and thus, the statute of limitations did not begin to run until the United States asserted a new claim of exclusivity.  Id.  Tin Cup argues the United States made a similar acknowledgment of Tin Cup's possession of an easement in this case when the Government conceded that Tin Cup constructed and owned the Dam.  As noted above, however, Tin Cup's ownership of the Dam structure does not, in and of itself, grant Tin Cup ownership of an easement on the land on which the Dam sits.  Tin Cup has not pointed to any instance where the Government expressly acknowledged Tin Cup's possession of an

_____

[1]Tin Cup observes that the special use permit in Roth contained an abandonment provision identical to the one Judge Lynch relies on here.  In Roth, however, the Government did not argue that the abandonment provision triggered the statute of limitations; it relied solely on the permit's termination provision.  The court in Roth therefore did not have the opportunity to address the effect of the abandonment provision.

easement.  In fact, here, the Forest Service denied having sufficient information to determine whether an easement existed.

Tin Cup also contends Judge Lynch's recommendation is contrary to Shranak.  425 F.3d 1213.  According to Tin Cup, Shranak stands for the proposition that requiring a person to obtain a permit does not constitute a claim of exclusive rights by the Forest Service sufficient to trigger the QTA's statute of limitations.  Shranak, however, did not foreclose the possibility that a particular provision in a permit may constitute an adverse claim by the Government.  Prior to filing their QTA action, the plaintiffs in Shranak did not possess any permits.[2]  Id. at 1215-16.  Instead, the conditional grant of their applications for permits is what prompted the plaintiffs to file suit.  Id. Thus, the court in Shranak did not have an opportunity to consider whether language in a permit that denies the existence of an easement can trigger the QTA's statute of limitations.

Despite Tin Cup's objections, I find the abandonment provision contained in the special use permits issued to Tin Cup and its predecessors-in-interest were sufficient to put Tin Cup on notice of the Government's claim of exclusive ownership of the

_____

[2]One of the plaintiffs in Shranak obtained a permit to use a road twenty-years before filing suit.  Skranak v. Castenada, 425 F.3d 1213, 1215 (9th Cir. 2005).  The Ninth Circuit, however, did not determine whether this permit constituted an adverse claim for purposes of the QTA's statute of limitations because the factual record was not fully developed.  Id. at 1217-18.

land underlying the Dam.  This provision appeared in special use
permits more than twelve years before Tin Cup filed its
counterclaims in this case, and thus, Tin Cup's QTA claim is
barred by the statute of limitations.  Because I conclude the
abandonment provision triggered the statute of limitations, this
Order will not address Judge Lynch's alternative rational for
recommending dismissal of Tin Cup's QTA claim, i.e., that the
Forest Service's 1967 denial of Tin Cup's request to use
mechanized equipment to access the Dam constituted an adverse
claim by the Government triggering the statute of limitations.

**B.    Administrative Procedure Act Claim**

Judge Lynch also recommended dismissing Tin Cup's dam safety
claim without prejudice for failure to exhaust administrative
remedies.  Tin Cup seeks a ruling that responsibility for safety
at the Dam lies with the State of Montana, not the Forest
Service.  To achieve this result, Tin Cup phrases its claim in
briefing as a challenge under the APA to the Forest Service's
decision to assert exclusive dam safety authority by repairing
the Dam in June 1998.  Judge Lynch determined, because Tin Cup
failed to follow regulations setting forth required
administrative review procedures, it had not exhausted its
administrative remedies as required to obtain judicial review of
an agency decision under the APA.  In its objections, Tin Cup
asserts communications between the Forest Service and the

-7-

Department of Justice regarding the necessity of Forest Service intervention in the situation at the Dam establish the presence of administrative exhaustion. These communications, however, are not sufficient to exhaust administrative remedies pursuant to 36 C.F.R. Part 251. As Judge Lynch noted, exhaustion requires, in part, that Tin Cup provide a written notice of appeal stating the law, regulation, or policy it believes the Forest Service violated. Tin Cup points to no such written notice prior to its filing of its amended counterclaim, and thus, the exhaustion requirement has not been satisfied.

### III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Judge Lynch's Findings and Recommendation are adopted to the extent they recommend dismissing Tin Cup's QTA claim based on the abandonment provision of the special use permits and dismissing Tin Cup's APA claim based on failure to exhaust administrative remedies.

IT IS FURTHER ORDERED that the United States' Rule 12 Motion to Dismiss Amended Counterclaim (dkt #237) is GRANTED.

IT IS FURTHER ORDERED that Tin Cup's Motions for Summary Judgment (dkt #202, 232) are DENIED AS MOOT.

IT IS FURTHER ORDERED that the United States' Motion for Summary Judgment (dkt #248) is DENIED AS MOOT.

The Clerk of Court is directed to enter judgment in favor of Counterclaim Defendant United States and against Counterclaimant

Tin Cup on Counterclaimant's amended counterclaims, and close the case.

Dated this _4_ day of April, 2007.

_____
Donald W. Molloy, Chief Judge
United States District Court